**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 05a0707n.06
Filed: August 15, 2005

**No. 04-3761**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

UNITED STATES OF AMERICA,)

 Plaintiff-Appellee,      )    **ON APPEAL** FROM THE
              )    UNITED STATES DISTRICT COURT
v.              )    FOR THE NORTHERN DISTRICT
              )    OF OHIO
FARREN J. McCLENDON,     )
              )
 Defendant-Appellant.      )      **OPINION**
              )
_____ )

**Before: MOORE and COLE, Circuit Judges, and WISEMAN,** * **District Judge.**

 **Thomas A. Wiseman, Jr., District Judge.** The issue presented in this case is whether the

district court abused its discretion in refusing to grant a continuance of a criminal trial. For the

reasons that follow, we hold that such refusal under the circumstances here was an abuse of

discretion and we **REVERSE** and **REMAND** for a new trial.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

 On August 21, 2003, McClendon, Defendant-Appellant, was driving his maroon Chrysler

Concord on Midlothian Blvd., which borders the cities of Boardman and Youngstown, Ohio. He

was stopped by police officer Daryn Tallman because his rear license plate light was not

functioning. At the time McClendon was stopped, there were two other males in the vehicle, who

---

 *The Honorable Thomas A. Wiseman, Jr., United States District Court for the Middle District
of Tennessee, sitting by designation.

were later identified as Marcus Easterly and Robert Shelton. Easterly and Shelton are cousins. All three of them were ordered to stay in the car while Officer Tallman ran their information. While running the information, Officer Tallman noticed that all of the occupants of the car were moving around, especially the rear seat passenger, Robert Shelton, and Officer Jack Cochran, a backup officer, saw the handle and trigger guard of a firearm located on the passenger floorboards. McClendon and the two passengers were removed from the vehicle and the firearm was retrieved. The firearm was loaded.

Because McClendon did not have a valid driver's license or vehicle insurance, the police were mandated by state law to tow the vehicle. As a result, an inventory search of the car was conducted and two additional firearms were retrieved: a loaded .380 semi-automatic pistol was found wedged between the console and the driver's side and another loaded firearm was found underneath the driver's seat with its handle towards the rear and the barrel pointing towards the front of the car. All three occupants of the car, McClendon, Robert Shelton and Marcus Easterly, were arrested for carrying concealed weapons. McClendon was later charged with unlawfully carrying the .380 pistol.

The three firearms were fingerprinted and a fingerprint that was attributed to Shelton was found on the magazine of the .45 automatic. No sufficient fingerprints for a comparison were found on the other two weapons.

On December 10, 2003, McClendon was charged with being a convicted felon in possession of a firearm along with Easterly and Shelton as co-defendants. On December 23, 2003, McClendon pled not guilty to the indictment and trial was set for January 26, 2004. His appointed CJA counsel,

2

Albert Palombaro, did not attend the hearing.

Between January 19th and January 21st, McClendon first met with Mr. Palombaro since his initial appearance in November. During these meetings McClendon asserted his innocence and his desire to go to trial but Mr. Palombaro told him that he had no chance of getting a sympathetic jury in Cleveland or Akron, Ohio. Mr. Palombaro also used racial slurs. Mr. Palombaro never requested discovery from the U.S. Attorney nor did he conduct any investigation but simply urged McClendon to accept the plea agreement.

On January 21, 2004, McClendon entered a plea of guilty to the charge of being a convicted felon in possession of a firearm. Upon returning to jail, McClendon contacted his fiancee and expressed his dissatisfaction with his lawyer and desire to withdraw his plea. On April 8, 2004, McClendon filed five *pro se* motions with the district court. He had no contact with Mr. Palombaro between January 21st and April 8th. On April 14th, 2004, Mr. Palombaro moved the Court to withdraw as counsel.

New counsel, Edward Bryan was appointed on April 21, 2004 and received his appointment the following day. He thus had five days to prepare for the hearing on the motion to withdraw plea on April 27, 2004. When the motion was heard and denied, sentencing was first set for May 10, 2004, then was continued to May 18, 2004. During this time, Mr. Bryan had to prepare for the sentencing hearing, as well as for further pursuit of withdrawal of McClendon's guilty plea.

On May 18, 2004, McClendon filed a motion to reconsider the district court's denial of McClendon's motion to withdraw. After a hearing, the district court granted the motion to withdraw guilty plea, ordered the defense to file any necessary motions to suppress and scheduled the

3

suppression hearing for May 21, 2004. The trial was scheduled to immediately follow. Upon McClendon's oral motion to continue, the district court continued the trial date to May 25, 2004 leaving Mr. Bryan with six days to switch gears and concentrate on preparations for trial rather than on the motion and sentencing preparation.

Among the Government's discovery material was a firearm trace for the .380 pistol. The firearm trace was completed by ATF agent Matthew Harrell. The trace indicated that the pistol had belonged to a David Ewing, a Youngstown, Ohio resident. According to the trace report, Ewing told Agent Harrell that he believed that a man named David Guss stole the pistol because he had seen Guss trade stolen property for illegal narcotics in the past. When later interviewed by the defense counsel, Guss denied possessing the pistol. However, Guss told the defense counsel that he was familiar with McClendon, Shelton and Easterly. Guss also told the counsel that he had not seen McClendon for approximately eight years prior to his arrest but had seen both Shelton and Easterly a few months before their arrest. The defense was not able to locate Ewing before trial to investigate his statements regarding the pistol. In addition, Agent Harrell was not available for trial because he was in training.

On May 24, 2004, McClendon hand-delivered an *ex parte* motion to continue trial date to the court. In the motion, Mr. Bryan notified the court of his inability to secure critical witnesses and explained that continuance of the trial was necessary so that further investigation into the last known possessor of the pistol could be made and ATF agent Harrell could be present to testify as to his findings regarding the last known possessor of the pistol. The motion was filed *ex parte* because it included the defense strategy and potential witnesses who were unavailable at the time but needed

to be contacted, interviewed, and subpoenaed as witnesses for the defense. The motion asked for a continuance of at least thirty days.

On the day of the trial, the district court returned the motion to Mr. Bryan stating that it would not consider any *ex parte* filings. The motion to suppress was denied and trial proceeded.

At trial, both Robert Shelton and Marcus Easterly testified against McClendon. The testimonies were arranged pursuant to their agreement with the Government subsequent to Shelton and Easterly's guilty plea and sentencing.

Shelton testified that Easterly and he were riding with McClendon because they asked McClendon for a ride to Easterly's girlfriend's house. Shelton was seated in the rear seat. He admitted that he had a loaded .45 caliber firearm in his pant's pocket when he got into McClendon's car. He testified that during the ride he was getting high and was talking to his girlfriend on the cell phone. Shelton also testified that he saw a black firearm on McClendon's lap when he leaned up into the front seat to talk with him. Shelton denied possessing any other firearm on the night of the stop.

Marcus Easterly testified that he was sitting in the front passenger's seat when McClendon's vehicle was stopped. He admitted that he had put a gun under his seat that was still there when the police stopped the car. Easterly also testified that he also had been smoking dope that day and was pretty tired by the time he asked McClendon for a ride. When the car was stopped by Officer Tallman, he said he got angry with McClendon for not informing either him or Shelton that there was an officer following the vehicle. He wanted an opportunity to run but McClendon convinced him that all would be okay so he decided "not to bolt the scene." Easterly further testified that he

5

witnessed McClendon take a firearm out of his pants pocket and place it inside of the center console of the vehicle and close the lid.

Both Shelton and Easterly were dissatisfied with McClendon in getting pulled over and they both testified that they believed that McClendon should take the blame for all of the guns. The three had discussions concerning responsibility while they were housed in jail. At the time of arrest, Easterly had a twenty-year parole sentence looming from a previous Ohio sentence, which was sure to be revoked for this possession.

The jury returned a verdict of guilty on May 26, 2004, and the court sentenced McClendon to thirty-two months of incarceration and two years of supervised release immediately following the reading of the verdict.

Mr. Byran filed a motion for new trial alleging that the failure to grant the continuance caused prejudice to McClendon's ability to present a defense. The district court denied the motion and this appeal followed.

## II. STANDARD OF REVIEW

The district court's decision to deny a motion to continue is reviewed under an abuse of discretion standard. *See Morris v. Slappy*, 461 U.S. 1, 11-12 (1983) (holding that whether to grant a motion to continue is within the broad discretion of the district court and will not be reversed on appeal absent a clear abuse of discretion).

## III. APPLICABLE LAW[1]

---

[1]Both in its appellate brief and during the oral argument, the United States heavily relied on *United States v. Boyd*, 620 F.2d 129, (6th Cir. 1980). In *Boyd*, a panel of the Sixth Circuit adopted the rule that to justify a continuance for the purpose of locating a witness, the moving party must

6

In *Morris v. Slappy*, the U.S. Supreme Court held that on matters of continuances broad discretion is granted to trial courts. *See* 461 U.S. at 11. Not every restriction on counsel's time or opportunity to investigate or to consult with the client or otherwise to prepare for trial violates a defendant's Sixth Amendment right to counsel. *Id.* Only an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay violates the right to the assistance of counsel. *Id.* at 11-12. To demonstrate that the trial court's error amounts to an abuse of a trial court's discretion requiring reversal, the defendant must show that actual prejudice stemmed from the denial of the motion. *United States v. King*, 127 F.3d 483, 487 (6th Cir. 1997). The defendant demonstrates actual prejudice by showing that a continuance would have made relevant witnesses available or added something to the defense. *Id.*

Whether a continuance is appropriate in a particular case depends on the facts and circumstances of that case with the trial judge considering, among other things, the length of delay, previous continuances, inconvenience to litigants, witnesses, counsel and the court, whether the delay is purposeful or is caused by the accused, the complexity of the case, and whether denying the continuance will lead to identifiable prejudice. *See Wilson v. Mintzes*, 761 F.2d 275, 281 (6th Cir. 1985).

## IV. ANALYSIS

---

show that the witness would give substantial favorable evidence and that the witness is available and willing to testify. *Id*. at 132. However, the Court finds that *Boyd* is inapposite in the present case, as the main reason for McClendon's request for continuance was to investigate his defense rather than to secure appearance of a particular witness at trial.

The crux of McClendon's argument is that the district court abused its discretion when it denied his motion to continue trial date. The reasons given to support the *ex parte* motion to continue were that (1) further investigation into the last known possessor of the .380 pistol was necessary; and (2) ATF agent Harrell needed to be present to testify as to his findings regarding the last known possessor of the pistol.

Mr. Bryan, defense counsel, asserts that had his motion to continue been granted he would have been able to interview and to obtain the attendance of Matthew Harrell, David Guss, and David Ewing. The defense could then have raised the inference that Guss was the source of the gun to the occupants of the vehicle. This inference would have been bolstered from Guss' statement that he had not seen McClendon for eight years but that he had seen both Easterly and Shelton recently. From this construct, the defense planned to argue that there was a greater likelihood that the gun belonged to Easterly or Shelton than to McClendon. Easterly and Shelton are cousins and each had received promise of reduced sentences for their testimony against McClendon. Mr. Bryan argues that he simply did not have time to fully investigate this possible defense. Given the fact that Mr. Bryan was forced to a hearing on the motion to suppress and a trial on the merits thirty-four days following the receipt of his appointment, and also considering the other matters he had to address in this time, his argument is persuasive. This may not have been a successful defense, but at least it was *a defense*. To deprive McClendon of any opportunity to present such a defense was prejudicial. Therefore, McClendon met his burden to show actual prejudice under *King*, 127 F.3d at 487.

In the Sixth Circuit, whether a continuance is appropriate in a particular case depends on the facts and circumstances of the case under *Wilson*, 761 F.2d at 281. The Court finds that the *Wilson* factors are met by the facts of this case.

First, the length of delay in this case is in McClendon's favor. McClendon's request for a continuance of thirty days to prepare for trial would not have delayed the case unreasonably.

Second, the continuance, if granted, would have been the first meaningful continuance since the trial date was filed.

Third, the Government did not allege any inconvenience for itself or its witnesses in case of a continuance. At the oral argument, the U.S. Attorney candidly admitted that she had supported McClendon's request for a continuance when he moved for continuance in the district court.

Fourth, the delay was not purposeful or caused by McClendon. McClendon alleges that his change of plea, entered on January 21, 2004, was a direct result of Mr. Palombaro's racial remarks and negative comments on the chance of success on the merits of the case and sentencing factors which were made to him less than a week before the trial date. Right after the plea, McClendon expressed his dissatisfaction with his attorney and his desire to withdraw his plea. After the plea, McClendon did his best to communicate such dissatisfaction and desire to the district court.

Fifth, even though the present case is not complex, as McClendon argues, this factor is of minimal importance given the fact that the defense counsel did not have enough time to investigate and pursue the only defense McClendon could have asserted in his trial.

Last, denial of the continuance led to identifiable injustice, as it deprived McClendon the chance to investigate into his only defense, which, if proven true, would have been detrimental to his co-defendants.

Considering the factors listed above, we find that continuance would have been proper under the facts of the present case.

Furthermore, the district court erred in its refusal to consider an *ex parte* pleading. Although rare, *ex parte* pleadings are necessary at times by both the defense and prosecution. The need to protect the identity of a confidential informant, the potential threat of harm to a witness, the desire to preserve the identity of a witness until counsel has an opportunity to interview him, and the desire to not disclose a defense strategy have all been used in *ex parte* applications to the court. *Cf. United States v. Moussaoui*, No. CRIM.01-455-A, 2002 WL 1311724, at *1 (E.D. Va. Apr. 26, 2002).

For the reasons listed above, we find that McClendon suffered prejudice to a degree which requires reversal of his conviction and remand for a new trial.

## V. CONCLUSION

For the foregoing reasons, the district court's refusal to grant the motion to continue is **REVERSED** and the case is **REMANDED** for a new trial.