NOT RECOMMENDED FOR PUBLICATION
File Name: 19a0354n.06

No. 18-3577

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jul 11, 2019
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellee, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE |
| v. | ) | NORTHERN DISTRICT OF |
| | ) | OHIO |
| JESSE GULLEY, | ) | |
| | ) | OPINION |
| Defendant-Appellant. | ) | |

---

**BEFORE: GRIFFIN, WHITE, and BUSH, Circuit Judges.**

**JOHN K. BUSH, Circuit Judge.** A federal district court sentenced Jesse Gulley to a 48-month term of imprisonment, followed by a three-year term of supervised release. On appeal, Gulley argues that the district court erred by denying his motion for leave to file a second, untimely motion to suppress evidence, and a motion to continue trial. For the reasons that follow, we **AFFIRM**.

## I. BACKGROUND

On July 25, 2017, police sought a search warrant for 1306 9th Street NW, in Canton, Ohio ("9th Street Residence"). The warrant affidavit stated the facts that follow.

In January 2016, the Federal Bureau of Investigation ("FBI") Safe Streets Task Force began investigating Gulley's activities of selling heroin, fentanyl, and carfentanil. Gulley was a convicted felon currently on post-release control. During the investigation, a reliable confidential source saw Gulley receive kilograms of heroin at the 9th Street Residence, and either the same or

another source saw Gulley with multiple firearms at the same address. The task force also conducted several controlled buys from Gulley and his known associates.

On July 25, 2017, the United States Marshals Service and other law enforcement agencies executed multiple arrest warrants. One such warrant brought agents to the 9th Street Residence to arrest an individual.[1] Jesse Gulley (who was not the subject of the arrest warrant) was inside the house and came to the door.[2] Inside the doorway, agents saw a clear plastic bag containing several rounds of ammunition. They also learned from Gulley that the residence was his wife's home, and that he had stayed the night. Ikasha Clark, Gulley's legal wife, came to the door and, during their conversation with the agents, she disclosed that there were multiple firearms in the residence. Clark told agents she was unsure what type of firearms they were and where in the residence they were located. Gulley later confirmed that there were multiple firearms in the house, identifying one as either an AK-47 or SKS. Also, according to the affidavit, Clark said that while she and Gulley were at the residence, one of the firearms had been dropped off at the house the previous day by an individual named "Tom." She further remarked that she had a conceal-and-carry permit and carried a firearm in her purse.

Based on this information recited in the affidavit he prepared, Agent Volpe obtained a search warrant. Agents searched the 9th Street Residence, finding heroin, cutting agents, masks, and other items indicative of drug trafficking. In addition, investigators found at least five firearms

---

[1] Information later provided by the government in Gulley's district court case clarified that the following law-enforcement agents executed search warrants that day, including the search at the 9th Street Residence: Canton Police Officer Jason Gaug; Special Agent James McFeeley with the Bureau of Alcohol, Tobacco, and Firearms; and United States Marshal Eric Midock. Agent Mike Volpe later arrived at the scene as well.

[2] The search warrant affidavit states that Gulley answered the door, while the Presentence Investigative Report ("PSR") and Officer Gaug's report states that Ikasha Clark answered the door, told officers she had lived at the residence for eight years, and stated that she did not know the individual whom agents were attempting to locate. Both the PSR and Gaug's report state that before any other discussion ensued, Gulley then approached the door; thus, this discrepancy is largely irrelevant.

and various types of ammunition, including .38 caliber rifle ammunition contained in the plastic bag that agents had seen when they executed the arrest warrants.

On December 5, 2017, a grand jury indicted Gulley on three counts: (1) possessing a machine gun, (2) possessing firearms and ammunition after being convicted of a felony, and (3) possessing firearms not registered to him in the National Firearms Registration and Transfer Record.

## A.     First Motion to Suppress

On January 16, 2018, Gulley filed his first motion to suppress evidence obtained pursuant to the July 25, 2017, search warrant. Gulley asserted standing to seek suppression because he was an overnight guest at the home, which was Clark's residence, and argued that the warrant was based on an affidavit that was insufficient to establish probable cause. In his brief in support of the motion, Gulley claimed that investigators "attempted to look inside of Clark's residence, despite not receiving consent from either Gulley or Clark." R. 24, PageID 79. However, this is all Gulley discussed in the initial motion regarding the agents' alleged warrantless entry. In his analysis of probable cause, Gulley argued that (1) the warrant affidavit did not specify either whether investigators corroborated the informant's tips or the locations where Gulley sold drugs to the informant during the controlled buys; (2) information contained in the affidavit was stale because it related to activities conducted in 2016, approximately two years before the search at issue; and (3) the good faith exception to the exclusionary rule did not apply because a reasonable officer should have known that the warrant lacked probable cause.

The government opposed Gulley's motion, maintaining that the affidavit established a sufficient nexus between the residence and the evidence agents sought regarding drug trafficking activities because the affiant, Agent Volpe, (1) was provided information that agents saw

ammunition in plain view near Gulley; (2) learned that Gulley was a felon; (3) personally heard Clark tell investigators that there were weapons and ammunition in the residence, including a firearm that was dropped off the previous day by a man named Tom, but that she could not describe any of the weapons; and (4) had information that Gulley had been involved in selling and distributing controlled substances and also possessed multiple firearms. The government did not discuss standing.

In his reply, Gulley again referenced the warrantless entry by the officers, arguing that the conversation in which Clark admitted there were firearms in the residence occurred "*after* agents decided to seek a warrant, and *after* they entered the home uninvited." R. 33, PageID 126. Thus, Gulley maintained that the remaining evidence—agents' observation of the bag with ammunition and their knowledge that Gulley was a convicted felon—was insufficient for establishing probable cause. Gulley also disputed that he or Clark told investigators that a gun was delivered the day before by someone named Tom. In the sur-reply briefing authorized by the district court, Gulley stated that he did not request an evidentiary hearing on the motion but rather asked that the court focus on whether the affidavit contained sufficient facts to establish probable cause.

The district court denied Gulley's motion to suppress on February 5, 2018. The court held that there was probable cause to search Clark's home because (1) the officers knew Gulley could not legally possess firearms; (2) Clark informed the officers that there were numerous firearms in the home, including one that had been dropped off at her home the day before when Gulley was present; and (3) Clark did not know what kind of firearm had been dropped off at her home. The district court held that these facts, in particular Clark's ignorance about the type of gun that was dropped off at her residence, gave the approving magistrate "probable cause to believe that the

firearm delivered the previous day, and perhaps other firearms within the home, belonged to Gulley." R. 39, PageID 161.

The district court noted that Gulley maintained that the conversation between himself, the agents, and Clark did not occur as described in the affidavit. Though recognizing that "if their allegations were true, the Court's analysis of probable cause would be very different," the court found that Gulley did not put forth any evidence supporting his account of the conversation, while the government provided the FBI agents' contemporaneous reports, both of which supported the account of the conversation in the affidavit. *Id.* Finally, the court held that even if the facts did not establish probable cause, the officers relied upon the affidavit in good faith.

## B.    Motion for New Counsel

On February 21, 2018, Gulley pro se filed a motion for new counsel, claiming that his original counsel did not discuss defense strategies with him and failed to request a *Franks*[3] suppression hearing, and that Gulley did not have the funds to pay his attorney. At a hearing held on Gulley's motion, the district court stated that the motion to suppress was based on Gulley's argument that there had been insufficient evidence in the affidavit to support the magistrate's issuance of the search warrant of Clark's home. The court explained that it had decided not to schedule the motion to suppress for a hearing because the court determined that the argument presented by Gulley did not require evidence beyond the affidavit itself. Consequently, the court stated that "in terms of [Gulley's] complaining about [the attorney] not seeking a hearing on that [suppression issue], he wouldn't have gotten it anyways." R. 108, PageID 649.

Gulley then clarified that he never wanted to challenge the affidavit itself, which he claimed was his counsel's idea. *Id.* at PageID 650. Instead, Gulley said that he wanted to challenge the

---

[3] A *Franks* hearing refers to *Franks v. Delaware*, 438 U.S. 154 (1978), dealing with defendants' rights to challenge evidence collected based on a warrant that was granted in reliance on a false statement.

warrantless entry, "that no one gave them permission to come in the house." *Id.* Gulley claimed that he "told [his attorney] this explicitly," and "[h]is professional experience was, he wanted to challenge the affidavit" even though Gulley told his counsel that "[t]he affidavit came after the officers entered [Clark's] home with no more, and no permission, and no extenuating circumstances." *Id.*

In response, the court remarked that it appeared the argument against the warrantless entry "would have been a loser" because Gulley did not have the requisite standing to establish a privacy interest in the property. *Id.* at PageID 651. The court and Gulley continued to engage in a back-and-forth regarding Gulley's desire to challenge the warrantless entry. Gulley asked whether the court was holding that his counsel had to request the hearing by the court's deadline, and because his counsel did not do so, the court did not grant a hearing. The court again explained, "I didn't say I was going to give a hearing. I wouldn't have given the hearing anyways. Because I have to look at . . . the affidavit, and read through that and make a judgment as to whether . . . there was enough evidence in the affidavit to support the issuance." *Id.* at PageID 657–58. The court further expounded "And there's also a good faith rule that . . . makes it even more difficult." *Id.* at PageID 658.

Gulley responded that "in the affidavit, the officer is saying things" that he and his wife did not say, "[a]nd the only way we can say that we didn't say these things is through a hearing." *Id.* The government interjected and stated that in the original motion to suppress briefing, Gulley failed to make a substantial showing that there was a false statement in the affidavit, which is the standard required for a *Franks* hearing. The court made no remark on this point and instead reexamined, and then granted, Gulley's request for a new counsel. The court indicated, however,

that it did not want the appointment of a new attorney to be cause for delaying the trial, which was reset for March 12, 2018.

**C.     Notice of Information**

On February 22, 2018, the government filed a sealed notice of information, disclosing that Officer Gaug was under criminal investigation and was currently suspended from the Canton Police Department.  The government stated that the Stark County Assistant Prosecutor informed the government that Gaug did not have anything to do with Gulley's case.  Furthermore, the government stated that it did not intend to call Gaug as a witness in Gulley's case, Gaug's involvement was minimal because he did not participate in the execution of the search warrant in Clark's home, and other agents (McFeeley and Midock) witnessed the same things that Gaug observed.

**D.     Motion to Continue Trial and Motion for Leave to File a Second Motion to Suppress**

On March 2, 2018, Gulley filed an unopposed motion to continue the trial, stating that his new counsel needed additional time to review discovery, conduct investigation, engage in a discussion to resolve the case, and draft legal motions.  The same day, Gulley also moved for leave to file a second motion to suppress.  Gulley argued that although the court's deadline for pretrial motions had passed, he demonstrated good cause to file his second motion to suppress pursuant to Federal Rule of Criminal Procedure 12.  In his proposed motion, Gulley articulated two grounds for suppression: (1) that officers had originally entered Clark's house without a warrant and in the absence of exigent circumstances; and (2) that a couple of days before the filing of the motion, it was made public that Officer Gaug, who made the initial warrantless entry, was suspended without pay.  Gulley also requested a *Franks* hearing.

In support of his suppression arguments, Gulley pointed to Gaug's memorandum to Agents Volpe and McMurtry. In the memorandum, Gaug averred that upon observing the clear plastic bag of ammunition, he asked Clark and Gulley if there were firearms in the residence, and Clark then told him about the guns in the home. R. 50-1, PageID 216. Gaug next asked Clark if he could examine the bag of ammunition, "and she granted [Gaug] permission to step inside the front door and retrieve the bag." *Id.* at PageID 217. However, Gulley claimed that Gaug's memorandum was false because, according to Gulley, immediately after he opened the door to his wife's home, Gaug saw the bag of ammunition, entered the home without a warrant, and begin questioning Gulley and Clark. Only at this point did Clark admit to the firearms in the home. Gulley contends that when drafting the warrant affidavit, Agent Volpe relied upon this false memorandum from Gaug, and consequently, the warrant affidavit contains falsehoods.

On March 5, 2018, the district court denied Gulley's motions to continue the trial and for leave to file a second motion to suppress. First, the court held that it had already found probable cause was present in the four corners of the affidavit supporting the search warrant. Second, the court held that Gulley had agreed in his first suppression motion that a hearing was not necessary, and even though he now had changed his mind, he had given up his right to seek a *Franks* hearing. Specifically regarding this point, the court found that Gulley could have raised in his first motion to suppress any facts or argument suggesting an unconstitutional intrusion by the officers prior to questioning him or Clark, and also, "the entering officers had an arrest warrant." R. 61, PageID 284. The court further found that "[a]dditionally, there is no manifest injustice here" because the court had set a deadline for either party to request a *Franks* hearing, and Gulley had responded that one was not necessary because the court should focus on whether the affidavit was supported by probable cause, which is what the court did. *Id.*

The court also held that, on the merits, Gulley did not show sufficient evidence to warrant a *Franks* hearing. In accordance with Supreme Court and Sixth Circuit caselaw, the court found that Gulley did not make a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and that the false statement was necessary to the finding of probable cause. *See Franks*, 438 U.S. at 171 ("There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons."). The court acknowledged that although Gaug's unpaid administrative leave was newly discovered, the reason for the leave did not appear to relate to Gulley's case and thus had no bearing on his request for another motion to suppress.

The court also denied Gulley's motion to continue the trial, finding that the case was "relatively simple" given the small number of witnesses and noting that pretrial discovery for the defense had concluded. R. 61, PageID 285. Additionally, the court noted that it had made Gulley aware that though his request for new counsel was approved, he would not be allowed to further delay the trial.

On March 9, 2018, Gulley entered a conditional guilty plea to being a felon in possession of firearms and ammunition in which he preserved the right to appeal from the district court's denial of his first motion to suppress as well as his motion for leave to file a second motion to suppress. The court sentenced Gulley to 48 months of incarceration, and this timely appeal follows.

## II.  STANDARD OF REVIEW AND APPLICABLE LAW

Under the Federal Rules of Criminal Procedure, motions to suppress evidence must be raised by pretrial motion before the deadline set by the district court.  Fed. R. Crim. P. 12(b)(3)(C), (c).  "But a district court may entertain an untimely motion 'if the party shows good cause.'" *United States v. Trujillo-Molina*, 678 F. App'x 335, 337 (6th Cir. 2017) (quoting Fed. R. Crim. P. 12(c)(3)).  "When a party files an untimely motion in the district court, and the district court finds facts to determine whether the late movant has satisfied the good-cause standard, we review that determination for an abuse of discretion." *United States v. Soto*, 794 F.3d 635, 655 (6th Cir. 2015) (citing *United States v. Walden*, 625 F.3d 961, 967 (6th Cir. 2010)); *see also United States v. Edmond*, 815 F.3d 1032, 1043–44 (6th Cir. 2016).  A "district court abuses its discretion when it relies on clearly erroneous findings of fact, uses an erroneous legal standard, or improperly applies the law." *Soto*, 794 F.3d at 645 (citation omitted).

## III.  ANALYSIS

As an initial matter, we note that in the district court's opinion denying Gulley's motion for leave to file an untimely second suppression motion, the court stated, "[a]dditionally, there is no manifest injustice here." R. 61, PageID 284.  It thus appears that the court found Gulley would not suffer any manifest injustice from the court's denial of Gulley's motion because, as the court elaborated, Gulley was provided with a deadline by which to seek a *Franks* hearing, and Gulley stated that such a hearing was unnecessary.  This is error.  Manifest injustice is not the standard upon which courts review waiver of Rule 12(b) motions; as we explained above, the correct standard is whether a party has demonstrated good cause for an untimely pretrial motion to suppress.

This error does not automatically result in remand, however. The district court held that manifest injustice was an alternative, or "additional[]" basis for its denial of Gulley's motion. *Id.* "We have explained that showing cause often requires developing and analyzing facts to assess whether the defendant can justify the late filing . . . and prejudice." *Trujillo-Molina*, 678 F. App'x at 338 (internal quotation marks and citation omitted). "Good cause is a flexible standard heavily dependent on the facts of the particular case as found and weighed by the district court in its equitable discretion." *Walden*, 625 F.3d at 965. Here, in its opinion, the district court provided the requisite facts and rationale for this court to hold that even under the good cause standard, Gulley's arguments fail. The court also held that (1) it already had determined the affidavit was supported by probable cause; (2) Gulley did not make a substantial preliminary showing of knowing or intentional, or reckless, inclusion of a falsity in the warrant affidavit; (3) Gaug's recent suspension does not relate to Gulley; (4) Gulley could have raised the alleged warrantless entry and thus, the failure of the affidavit to include the warrantless entry, in his first motion to suppress; (5) the officers had an arrest warrant; and (6) the court had set a deadline for either party to request a *Franks* hearing, Gulley had responded that such a request was not necessary because the court should focus on whether the affidavit was supported by probable cause. In fact, the court did make such a finding of probable cause based on the affidavit. Therefore, as we explain in detail below, Gulley has not demonstrated good cause for the untimely filing of a second suppression motion.

Gulley argues that the district court should have determined that he showed good cause because he had asked his initial attorney to file the motion challenging the warrantless entry but his attorney failed to do so, his "new counsel filed the motion for leave [to challenge the warrantless entry] as soon as possible, just seven days after being appointed," and this second suppression motion "required the court to resolve a factual dispute" concerning the allegedly

11

warrantless entry. Appellant Br. at 10. Gulley, therefore, contends that unlike the situation in *Trujillio-Molina*, in which we held that the defendant did not explain why he waited until after the district court's deadline to file a motion to dismiss, Gulley had good cause for his failure to comply with the district court's deadline to file the suppression motion and he requests a *Franks* hearing.

Unfortunately for Gulley, "we have rejected this same argument before." *United States v. Turner*, 602 F.3d 778, 787 (6th Cir. 2010). We have repeatedly held that good cause to excuse non-compliance with a court-ordered deadline is absent if the failure to timely file resulted from the lawyer's decision not to file a pretrial motion before the deadline. *Id.* (declining to find good cause when the defendant argued that he attempted to file a motion to suppress before the deadline but his attorney prevented him from filing it); *United States v. Nance*, 481 F.3d 882, 885 n.1 (6th Cir. 2007) (refusing to reach merits of suppression motion even where defendant unsuccessfully pressed his counsel to file it); *United States v. Obiukwu*, 17 F.3d 816, 819 (6th Cir. 1994) (holding that "[t]he fact that the district court saw fit to rule on the merits of [the] motion, despite its untimeliness, does not save the defendant from waiver of the grounds stated in the motion").

It is true that in most of these cases, the defendant, either pro se or through counsel, did not file a motion to suppress in the first instance. However, our holdings in these cases still control. Here, Gulley goes a step further than the defendants in those cases, seemingly arguing that because he secured new counsel who was receptive to filing the suppression motion that Gulley requested, Gulley demonstrated good cause for filing this second motion to suppress. We cannot say that this scenario constitutes good cause for an untimely pretrial motion; otherwise, every defendant who did not prevail on his or her initial motion to suppress might then seek a new lawyer to file a revised suppression motion. "A change in counsel alone is not sufficient to constitute good cause to grant relief from a waiver." *United States v. Reynolds*, 534 F. App'x 347, 357 (6th Cir. 2013)

(citations omitted). Because "nothing prohibited [Gulley's] counsel from making this motion [to suppress the allegedly warrantless entry] before the deadline," as the district court also held, the logic of our precedent regarding untimeliness applies. *Walden*, 625 F.3d at 965; *see also Reynolds*, 534 F. App'x at 357 (holding that later efforts by new counsel to renew defendant's motion to suppress and request a *Franks* hearing were untimely because the defendant's justification was that new defense counsel did not enter the case until after the motion cut-off date).

Gulley tries to distinguish his new motion as challenging the warrantless entry, in contrast to the previous motion to suppress, which he argues concerned only the warrant affidavit. However, both motions are ultimately about the contents of the affidavit. In the latter motion, Gulley found fault with the warrant affidavit's failure to mention the warrantless entry that led to further admissions from Gulley and Clark. Again, nothing prevented Gulley from bringing this argument in his first motion to suppress in which he challenged the same warrant affidavit. And, we agree with the district court that it already ruled that the warrant affidavit was supported by probable cause. Accordingly, we find no fault with the district court's conclusion that Gulley did not "articulate some legitimate explanation for the failure to timely file." *Walden*, 625 F.3d at 965.

Gulley, however, seeks to excuse his delay in filing because information concerning Gaug's suspension only became available after the court's deadline; thus, his motion was predicated on new evidence. Gulley emphasizes that Gaug's subsequent suspension for misconduct places Gaug's character at issue, thus "bolster[ing]" Gulley's contention that Gaug was the one who allegedly unlawfully entered Clark's home. Appellant Br. at 11. But this connection is tenuous at best. As the district court already found, after reviewing the information and arguments submitted by both parties, Gaug's suspension did "not appear to relate to Gulley at all." R. 61, PageID 284. The district court was provided with the draft second motion to suppress,

the appended article regarding Gaug's suspension, the notice submitted by the government concerning the investigation into Gaug, and the reports from the other officers at the scene at Clark's house providing their accounts. From these, the court determined that Gaug's unpaid administrative leave status "cannot support the court's reconsideration of Gulley's motion to suppress." *Id.* We agree. Other than reiterate the same arguments he made before the district court, Gulley has given our court no reason to find that the district court abused its discretion in its holding.

Gulley's other arguments also lack merit. First, Gulley appears to argue that the district court committed legal error when, during Gulley's change-of-counsel hearing, the district court stated that Gulley's motion to suppress "would have been a loser" because he did not "have a privacy interest in the property" and thus, had no standing to challenge the agents' entry into Clark's home. R. 108, PageID 651. The court's comments concerning Gulley's standing did not constitute a ruling or an opinion, and upon review of Gulley's briefing on his motion for leave, the court denied Gulley's motion on other bases: that Gulley waived his right to seek a *Franks* hearing; that he did not make a substantial preliminary showing that a false statement was included in the search warrant affidavit or was made knowingly and intentionally, or with reckless disregard for the truth; and that Gulley could have raised the merits of the second motion to suppress in his initial motion to suppress. The district court's opinion did not discuss Gulley's standing to bring the challenge. Therefore, the court neither found that Gulley lacked standing nor denied Gulley's motion for leave to file a second suppression motion on that basis. *Compare* R. 61.

Gulley additionally argues that the district court erroneously concluded that his second motion to suppress lacked merit because the entering agents had an arrest warrant. Gulley contends that an arrest warrant does not give agents license to enter a home when the subject is not there,

and here, the subject of the arrest warrant did not live at Clark's house and was not there at the time.

However, the district court did not make a legal error when stating that "the entering officers had an arrest warrant" in the context of its holding that Gulley could have raised, in his first motion to suppress, facts or argument suggesting an unconstitutional intrusion by the officers. It is true that an arrest warrant is not a search warrant, but "an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *Payton v. New York*, 445 U.S. 573, 603 (1980). Here, the agents were executing an arrest warrant at Clark's home because they had reason to believe that the suspect was inside the home. Moreover, an officer does not "violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed," and if its incriminating character is immediately apparent, the officer may seize the evidence without a warrant. *Horton v. California*, 496 U.S. 128, 134–36 (1990). Gulley does not dispute that here, officers noticed the clear plastic bag of ammunition in plain view. Finally, the district court also denied Gulley's motion for leave to file an untimely second motion to suppress on other grounds, not just the arrest warrant, as detailed above. Gulley has not demonstrated why these grounds constituted abuse of the court's discretion.

Lastly, Gulley has appealed the district court's March 5, 2018, order denying his motion to continue the trial. Gulley argues that the court's order incorrectly stated that it had, during Gulley's change of counsel hearing, "made Gulley aware that the court's granting his request for new counsel would not allow him to further delay his trial date," when in fact, the court had not previously done so. R. 61, PageID 285. In fact, Gulley argues that "[a]t no time during the

February 23 [hearing] did the district court tell [Gulley] that he would not continue the trial." Appellant Br. at 12.

Gulley is incorrect; the court repeatedly discussed solidifying the trial date. The court first stated that it was concerned Gulley was attempting to delay the trial and that the court needed to keep the case moving towards trial. R. 108, PageID 660–61. Then the court stated it would grant Gulley's request for new counsel and set the case for trial because the court had "other trials coming up." *Id.* at 661. The court again reiterated, "[w]e set scheduling dates, and we're kind of juggling, like, 30 cases and 100 defendants, and then we get these kinds of problems on the doorstep of trial." *Id.* The court then set the trial for March 12. Thus, Gulley was told by the court that the request for new counsel would not automatically result in a continuance, and the court set the March trial date.

In his reply, Gulley argues that the district court abused its discretion by rigidly enforcing the trial deadline despite good cause to extend the deadline. We find that Gulley has not demonstrated that he had good cause to continue the trial. In fact, the court provided adequate reasons for denying the continuance, explaining that the case was not complex, that it involved a small number of witnesses, and that pretrial discovery had already been provided to the defense.

On matters of continuances, trial courts have broad discretion. *Morris v. Slappy*, 461 U.S. 1, 11 (1983). In *United States v. McClendon*, 146 F. App'x 23, 26 (6th Cir. 2005) (citation omitted), we explained:

> Not every restriction on counsel's time or opportunity to investigate or to consult with the client or otherwise to prepare for trial violates a defendant's Sixth Amendment right to counsel. Only an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay violates the right to the assistance of counsel. To demonstrate that the trial court's error amounts to an abuse of a trial court's discretion requiring reversal, the defendant must show that actual prejudice stemmed from the denial of the motion. The defendant

16

demonstrates actual prejudice by showing that a continuance would have made relevant witnesses available or added something to the defense.

Unlike in *McClendon*, where defense counsel identified witnesses he wanted to interview but was prevented from doing so in the absence of the trial continuance, Gulley "cannot show that he was prejudiced by the district [court's] decision not to grant him a continuance so that he could file his suppression motion" because we find that he did not have good cause to excuse the untimely filing of his second suppression motion. *United States v. Lewis*, 605 F.3d 395, 402 (6th Cir. 2010). "Accordingly, we affirm the district court's denial of [Gulley's] motion for a[n] . . . ends of justice continuance." *Id.*

## IV.  CONCLUSION

We find that Gulley did not establish good cause for his untimely motion for leave to file a second motion to suppress. Also, the district court did not abuse its discretion by denying the motion or the motion to continue the trial. We therefore **AFFIRM** the district court's judgment.

17

HELENE N. WHITE, Circuit Judge, concurring. I concur in the affirmance on the basis that although the district court would have been justified in granting Gulley leave to file a second motion to suppress to enable him to raise issues not adequately addressed in his first counsel's timely motion to suppress, the court did not abuse its discretion in enforcing its deadlines and scheduling orders with the result that it refused to allow Gulley to file the late motion.