NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0370n.06

No. 20-3017

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jul 27, 2021
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| | ) | |
| ARVEL RAY HENDERSON, II, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE: GRIFFIN, LARSEN, and NALBANDIAN, Circuit Judges.

GRIFFIN, Circuit Judge.

Defendant Arvel Ray Henderson, II, was convicted of stealing public money, concealing bankruptcy assets, and committing bankruptcy fraud. On appeal, he asserts that the district court erred by denying: (1) his motion to dismiss the indictment, (2) his motion to continue the trial, and (3) his motion for a judgment of acquittal. He also argues that the district court improperly applied U.S.S.G. § 3A1.1(b)(1)'s two-level vulnerable victim enhancement. For the reasons below, we affirm defendant's convictions and sentences.

I.

Henderson filed for Chapter 7 bankruptcy. His bankruptcy schedules listed no cash on hand; a checking account with about $2,000; a savings account with about $1,000; his business, FTL Properties, which he valued at $1,000; one vehicle, a 2007 Mercedes valued at $6,000; and zero income. Henderson reported that he had no income from other sources from the three years

before his bankruptcy filing. Additionally, he indicated that he had not received any gifts during the year before he filed for bankruptcy.

Patti Baumgartner-Novak, the bankruptcy trustee, convened a § 341 Bankruptcy Code hearing for Henderson's bankruptcy case. At a § 341 hearing, the bankruptcy trustee and creditors have an opportunity to ask the debtor questions, and the debtor has a chance to verify information in the bankruptcy filing. There, Henderson—while under oath—confirmed that he had signed the bankruptcy petitions and schedules, and the information in his bankruptcy filing was accurate.

Eric Robinson, a Special Agent with the Federal Bureau of Investigation, reviewed documents from defendant's bankruptcy filing. After only "a brief glance over the bankruptcy file," Robinson detected apparent "indiscretions [and] discrepancies." Henderson had failed to include various assets, including multiple bank accounts (one of which had approximately $500,000 in it), two vehicles, and an annuity. Additionally, he had not listed a creditor—a deaf and elderly woman, referred to as "J.F.," whom he had deceived and to whom he owed $15,000 on a $20,000 loan.

Subsequently, a federal grand jury returned an indictment against Henderson, which was followed by a superseding indictment. The superseding indictment alleged that defendant had stolen public money (Count One, 18 U.S.C. § 641); concealed bankruptcy assets (Count Two, 18 U.S.C. § 152(1)); and committed bankruptcy fraud (Count Three, 18 U.S.C. § 157(2)). Henderson moved to dismiss the indictment. The district court denied the motion.

Before jury selection was completed, Henderson moved to continue the trial. He sought a delay because his bankruptcy attorney "admitted . . . to hav[ing] forged a very important document in this case" and defendant wanted "more time to dig in essentially to that matter to see what else is out there." The district court denied the motion. It reasoned that "[w]hile that may be a changed

fact," the revelation did not "justif[y] the continuance of this trial." Moreover, the district court noted that the admission's "impact on the case, if anything, [made things] more difficult for the Government than the defendant."

The trial proceeded, and after the prosecution rested its case, Henderson moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29. Regarding Counts Two (concealment of bankruptcy assets) and Three (bankruptcy fraud), he argued that "given the forgery by [his bankruptcy attorney] of the declaration form," "there [wa]s no foundation for any further activity in [the] case." That lack of foundation, according to defendant, "require[d] a dismissal of these two counts." The district court denied the motion. It reasoned that although "one might be able to argue that if the defendant was unaware of his signature being placed for the purpose of having documents electronically filed," defendant "nonetheless . . . took steps during the course of the bankruptcy where he validated or confirmed papers that were filed." For that reason, the district court concluded "that that unfortunate incident" did not "allow[] [the] defendant to escape the charge in the case." After the proofs closed, defendant renewed his Rule 29 motion. The district court again denied it. The jury subsequently convicted Henderson on all counts.

The modified presentence investigation report ("PSR") recommended applying U.S.S.G. § 3A1.1(b)(1)'s two-level sentencing enhancement for committing an offense against a vulnerable victim. The PSR determined that one of Henderson's unlisted creditors, J.F., was a vulnerable person and that she was a victim of his offenses. Defendant objected. He argued that "the United States Government was the victim," not J.F. The government urged the court to apply the enhancement because creditors are victims of bankruptcy fraud and J.F. "[wa]s a creditor of Mr. Henderson for the $15,000 that remain[ed] on the $20,000 loan." And because Henderson did not list J.F. or the debt he owed to her "in the bankruptcy fillings, . . . her opportunity to participate [in

the bankruptcy proceedings] was effectively denied." Additionally, the government contended that J.F. was a vulnerable victim because Henderson's relevant conduct affected her. According to the government, defendant's "[r]elevant conduct [went] far beyond simply what[] [had] been charged, and the $20,000 [loan] that he obtained from [J.F.], of course, [wa]s relevant conduct because it[] [was] an asset that was concealed in a bankruptcy that contributes to the loss amount in this case." "And the [deceptive] manner in which he obtained it," the government argued, "br[ought] her into the broader ambit of who is a victim under the vulnerable victim enhancement."

The district court applied the enhancement. It viewed J.F. to be a vulnerable victim in part because of her advanced age and hearing disability. It also observed that the defendant had given her the false impression that he was romantically interested in her. The district court thus calculated Henderson's Guidelines range at 70 to 87 months and imposed a within-Guidelines sentence of 72 months' imprisonment. Henderson timely appealed.

## II.

## A.

"We review a district court's refusal to dismiss an indictment only for abuse of discretion." *United States v. Powell*, 823 F.2d 996, 1001 (6th Cir. 1987). But we "review[] the district court's legal conclusions de novo and its factual findings for clear error or abuse of discretion." *United States v. Bedford*, 914 F.3d 422, 426 (6th Cir. 2019) (emphasis omitted).

On appeal, Henderson argues that denying the motion was error because, according to him, he did not do the conduct—i.e., he did not sign the allegedly inaccurate bankruptcy petition—that was the basis for Count Two and Count Three in the superseding indictment. But this was not the argument Henderson made when he moved to dismiss his indictment. Instead, he argued that "the government acted outrageously and in bad faith while investigating defendant's alleged concealment of bankruptcy estate assets." That makes sense—Henderson did not learn about the

signature issue until after he filed his motion to dismiss. But Henderson never asked the district court to reconsider its previous denial of his motion after his bankruptcy attorney's conduct came to light. So Henderson faults the district court for not sua sponte reconsidering its decision on his motion after learning about the signature issue.

At any rate, we spot no error in the district court's denial of Henderson's motion to dismiss. Even if we credit Henderson's argument that the district court should have gone back on its own to reconsider the motion, whether Henderson signed the bankruptcy petition is a factual dispute, and a motion to dismiss an indictment is not an appropriate vehicle to resolve such disputes. *See United States v. Schaffer*, 586 F.3d 414, 426–27 (6th Cir. 2009). Accordingly, this challenge fails.

B.

Henderson next challenges the district court's denial of his continuance motion. We review "a district court's decision whether to grant or deny a motion for a continuance for an abuse of discretion." *United States v. Amawi*, 695 F.3d 457, 480 (6th Cir. 2012). "[T]o demonstrate reversible error, the defendant must show that the denial [of his continuance motion] resulted in actual prejudice to his defense."[1] *Landrum v. Mitchell*, 625 F.3d 905, 927 (6th Cir. 2010) (quoting *United States v. King*, 127 F.3d 483, 487 (6th Cir. 1997)). "Actual prejudice may be demonstrated by showing that additional time would have made relevant witnesses available or otherwise benefited the defense." *Id.* at 928 (quoting *Powell v. Collins*, 332 F.3d 376, 396 (6th Cir. 2003)).

Defendant has not shown prejudice. He does not identify relevant witnesses that would have been available if the district court had granted the motion. Nor does he articulate how more time would have benefitted his defense—other than suggesting that his attorney "might have"

---

[1]Because defendant does not clear the prejudice hurdle, we need not—and do not—address the typical factors that we use to assess whether a district court properly denied a continuance motion. *See King*, 127 F.3d at 487.

found something helpful. That is not enough. *See United States v. Martin*, 740 F.2d 1352, 1361 (6th Cir. 1984) ("Every lawyer on the losing side of a case probably feels that if he had had a little more time he might have done something else which would have been helpful." (quoting *Sykes v. Virginia*, 364 F.2d 314, 316 (4th Cir. 1966))).

Henderson's invocation of *United States v. McClendon*, 146 F. App'x 23 (6th Cir. 2005), does not change our conclusion. According to defendant, although his attorney's "plan to locate witnesses and call them to testify" might not have been a winning defense, it was at least a defense (like in *McClendon*). *McClendon*, however, does not control here. In that case, the defendant identified specific people who could testify about his defense of not possessing a firearm. *Id.* at 27. Here, in contrast, Henderson offers no set of comparable specifics. Instead, he merely suggests he "might have" found something that would have helped his case. Again, that is not enough. *See Martin*, 740 F.2d at 1361.

C.

Henderson contends that the district court erred by denying his Rule 29 motion for a judgment of acquittal. We review the denial of a Rule 29 motion de novo. *United States v. Ashraf*, 628 F.3d 813, 822 (6th Cir. 2011).

A criminal defendant bears a "very heavy burden" when she challenges the denial of a Rule 29 motion. *United States v. Rogers*, 769 F.3d 372, 377 (6th Cir. 2014) (quoting *United States v. Abboud*, 438 F.3d 554, 589 (6th Cir. 2006)). We "must affirm the district court's decision if the evidence, viewed in the light most favorable to the government, would allow a rational trier of fact to find the defendant guilty beyond a reasonable doubt." *Ashraf*, 628 F.3d at 822 (quoting *United States v. Mabry*, 518 F.3d 442, 447–48 (6th Cir. 2008)). Additionally, we afford the government "the benefit of all inferences which can reasonably be drawn from the evidence, even if the evidence is circumstantial," and "[i]t is not necessary that the evidence exclude every reasonable

hypothesis except that of guilt." *United States v. Carter*, 355 F.3d 920, 925 (6th Cir. 2004) (quoting *United States v. Head*, 927 F.2d 1361, 1365 (6th Cir. 1991)).

Henderson's judgment-of-acquittal motion concerned Count Two (concealment of bankruptcy assets) and Count Three (bankruptcy fraud) of the superseding indictment. On appeal, Henderson does not give us much to go on. His only argument concerning the sufficiency of the evidence reduces to the following: A rational trier of fact—viewing the evidence in the light most favorable to the government and giving the government the benefit of all reasonable inferences that could be drawn from the evidence—could not have found him guilty beyond a reasonable doubt on Counts Two and Three because he did not sign the fraudulent bankruptcy petition. Even if we accept that Henderson did not sign the petition—and the evidence that suggests he did sign it—we still find his argument unpersuasive.

Count Two alleged that defendant violated 18 U.S.C. § 152(1). That provision prohibits "knowingly and fraudulently conceal[ing] from a custodian, trustee, marshal, or other officer of the court charged with the control or custody of property, or, in connection with a case under [the Bankruptcy Code], from creditors or the United States Trustee, any property belonging to the estate of a debtor." 18 U.S.C. § 152(1). To establish that Henderson violated § 152(1), the government was required to "show that: 1) [he] knowing[ly] and fraudulently; 2) concealed property; 3) from the trustee; 4) that belonged to his estate." *United States v. Wagner*, 382 F.3d 598, 607 (6th Cir. 2004).

Count Three alleged that Henderson violated 18 U.S.C. § 157(2). Under that provision, "[a] person who, having devised or intending to devise a scheme or artifice to defraud and for the purpose of executing or concealing such a scheme or artifice or attempting to do so" commits a crime when he "files a document in a proceeding under [the Bankruptcy Code]." 18 U.S.C.

§ 157(2).  A violation of § 157(2) has three elements: (1) "the existence of a scheme to defraud or intent to later formulate a scheme to defraud," (2) "the filing of a document in a proceeding under" the Bankruptcy Code, and (3) "for the purpose of executing or attempting to execute the scheme." *Wagner*, 382 F.3d at 612 (quoting *United States v. DeSantis*, 237 F.3d 607, 613 (6th Cir. 2001)). "In reviewing the sufficiency of the evidence of the intent to defraud, we are mindful of the fact 'that the question of intent is generally considered to be one of fact to be resolved by the trier of the facts . . . and the determination thereof should not be lightly overturned.'" *Id.* (alteration in original) (quoting *United States v. Daniel*, 329 F.3d 480, 487 (6th Cir. 2003)).

Henderson contends that he "did not do the act which formed the basis for the indictment," which according to him was signing the bankruptcy petition.  "The evidence," however, "clearly belies [defendant]'s argument" that he did not engage in acts that constituted concealment of bankruptcy assets and bankruptcy fraud.  *Id.*  Multiple witnesses testified that Henderson failed to include assets and liabilities in his bankruptcy schedules, such as:

- an annuity;

- a 2004 BMW X3 and a 2014 Jeep Grand Cherokee;

- approximately $500,000;

- $15,000 he still owed on a $20,000 loan from J.F.; and

- multiple bank accounts.

And Henderson's attorney testified that he had no doubt Henderson approved the schedules and that Henderson signed his voluntary petition.  Moreover, at his § 341 Bankruptcy Code hearing, defendant testified under oath that his petition and schedules were accurate.  "[T]he evidence clearly demonstrates an intent to defraud" and concealment of bankruptcy assets; "there is no doubt that a rational trier of fact could have found [Henderson] guilty" of Counts Two and Three of the superseding indictment.  *Id.* at 613.  Accordingly, defendant's sufficiency argument fails.

D.

Finally, Henderson contends that the district court erred when it calculated his Guidelines range by incorrectly applying U.S.S.G. § 3A1.1(b)(1)'s two-level vulnerable victim enhancement. Whether the district court properly applied that enhancement is a procedural reasonableness challenge. *See United States v. Walters*, 775 F.3d 778, 781 (6th Cir. 2015). So long as the issue is preserved (as it was here), the party challenging the procedural reasonableness of a sentence has the burden to show that the district court abused its discretion when it imposed the sentence. *See United States v. Houston*, 529 F.3d 743, 756 (6th Cir. 2008). A sentence can be procedurally unreasonable for various reasons, including if the district court "improperly calculat[ed] . . . the Guidelines range." *United States v. Davis*, 751 F.3d 769, 773 (6th Cir. 2014) (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)). Moreover, in this context, "our review of the district court's specific legal determinations . . . is de novo, and our review of the district court's specific factual findings is for clear error." *Id.*

Section 3A1.1(b)(1) increases a defendant's offense level by two "[i]f the defendant knew or should have known that a victim of the offense was a vulnerable victim." U.S.S.G. § 3A1.1(b)(1); *United States v. Moon*, 513 F.3d 527, 540 (6th Cir. 2008). Application Note 2 elaborates:

> For purposes of [U.S.S.G. § 3A1.1](b), "vulnerable victim" means a person (A) who is a victim of the offense of conviction and any conduct for which the defendant is accountable under [U.S.S.G.] § 1B1.3 (Relevant Conduct); and (B) who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct.

U.S.S.G. § 3A1.1 cmt. n.2; *Moon*, 513 F.3d at 540. Relevant conduct includes "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant." U.S.S.G. § 1B1.3(a)(1)(A); *Moon*, 513 F.3d at 540. Therefore,

§ 3A1.1(b)(1)'s enhancement can apply even if a person is merely a vulnerable victim of a defendant's relevant conduct rather than of the offense of conviction. *See Moon*, 513 F.3d at 541.

For the purposes of § 3A1.1(b)(1), whether a person is a "victim" and whether a person is "vulnerable" are factual questions that we review for clear error. *See United States v. Stokes*, 392 F. App'x 362, 369 (6th Cir. 2010) (acknowledging § 3A1.1(b)(1) victimhood as a fact question); *United States v. Salyer*, 893 F.2d 113, 116–17 (6th Cir. 1989) (acknowledging § 3A1.1(b)(1) vulnerability as a fact question). A factual finding is clearly erroneous when we are "left with the definite and firm conviction that a mistake has been committed" by the district court. *Heights Cmty. Cong. v. Hilltop Realty, Inc.*, 774 F.2d 135, 140 (6th Cir. 1985). Importantly, "[t]he question is not whether the finding is the best or only conclusion that can be drawn from the evidence, or whether it is the one which [we] would draw." *Id.* Instead, "the test is whether there is evidence in the record to support the lower court's finding, and whether its construction of that evidence is a reasonable one." *Id.*

The district court's factual finding that J.F. was a vulnerable victim was not clearly erroneous. There was evidence that J.F. was a victim of Henderson's bankruptcy offenses or his relevant conduct in at least two ways. First, J.F. testified that she loaned Henderson $20,000 because he falsely told her he needed help paying his ailing grandfather's medical bills. He paid back $5,000 but not the remaining $15,000. Henderson did not include this debt in his bankruptcy disclosures, which was an obstacle to J.F. participating in the bankruptcy proceedings as a creditor. Second, defendant deceived J.F. into purchasing a $48,000 2014 Jeep Grand Cherokee for him, which he did not list in his bankruptcy disclosures. J.F. was also "vulnerable." She was an elderly woman, and from her childhood, she had been "deaf, and [her] mother [had] assumed the responsibility for all [her] business, medical, and financial transactions." As a result, she had

"never really [been] taught how these transactions worked, what was involved, questions to be asked, and so forth." J.F. testified that during the purchase of the Jeep, she could not hear anything the car dealership employees said, she could not read their lips or otherwise understand what they were saying, and she did not understand the documents she was being asked to sign. Additionally, as the district court noted, Henderson preyed upon J.F. by causing her to believe that he was romantically interested in her. For instance, J.F. testified that defendant bought her a $500 heart-shaped necklace and sent her flowers on Valentine's Day. We thus conclude that the district court's factual determination—that J.F. was a "vulnerable victim"—was not clearly erroneous. Accordingly, the district court properly applied the enhancement.

## III.

For these reasons, we affirm the district court's judgment.